UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 16-088 (CKK) |
| | : | |
| v. | : | |
| | : | |
| DAVID BERNIER, | : | VIOLATION: |
| | : | 18 U.S.C. § 1001 |
| Defendant | : | (False Statements) |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, defendant **DAVID BERNIER** (**"BERNIER"**) and the United States agree and stipulate as follows:

A. Introduction

1. In 2005, **BERNIER** purchased a condominium in Fort Lauderdale, Florida ("Property One"). In 2007, **BERNIER** purchased another condominium in Fort Lauderdale, Florida ("Property Two"). In October 2008, Capital One Bank, N.A. ("Capital One") foreclosed on Property One. In May 2009, JP Morgan Chase, N.A. ("JP Morgan Chase") foreclosed on Property Two.

2. The Servicemembers Civil Relief Act (SCRA), codified at 50 U.S.C. §§ 501-597b, provides protections for military members as they enter active duty. Among other things, the SCRA prohibits non-judicial foreclosures against service members who are in military service or within the applicable post-service period, as long as they originated their mortgages before their period of military service began.

3. On March 12, 2012, the United States, 49 states, and the District of Columbia filed a civil complaint against, among others, JP Morgan Chase, alleging that the defendant financial institutions had violated several federal laws, including SCRA, by improperly

1

foreclosing on the mortgages of active duty military service personnel. On April 4, 2012, the United States District Court for the District of Columbia approved the parties' settlement of the civil action ("National Mortgage Settlement") and entered a Consent Judgment that provided for the establishment of a Settlement Fund out of which payments would be made to qualified individuals whose homes had been wrongfully foreclosed upon by the defendant financial institutions from January 1, 2006 to April 4, 2012. The National Mortgage Settlement also required the defendant financial institutions to hire third-party administrators to identify potentially eligible claimants. JP Morgan Chase retained Law Firm A to act as its third-party administrator.

4. On July 26, 2012, the United States filed a civil complaint against Capital One alleging that Capital One had violated several federal laws, including SCRA, by improperly foreclosing on the mortgages of active duty military service personnel from July 15, 2006 to November 21, 2011. On July 24, 2012, the United States District Court for the Eastern District of Virginia approved the parties' settlement of the civil action ("Capital One Settlement") and entered a Consent Order that provided for payments to qualified individuals whose homes had been wrongfully foreclosed upon by Capital One.

5. In compliance with the terms of the National Mortgage Settlement and the Capital One Settlement, the defendant financial institutions notified potential claimants of their possible entitlement to receive compensation under the settlement and invited those individuals to submit the requisite applications. Following receipt of an application, the financial institutions made tentative decisions as to whether or not to make an award to the claimant and then forwarded those tentative decisions to the Housing and Civil Enforcement Section of the Civil Rights Division of the United States Department of Justice ("CRT"), an agency within the executive

branch of the federal government headquartered in Washington, D.C., for final approval.

### B. False Statements to the U.S. Department of Justice

6. In or about March 2014, **BERNIER** sent an email to an attorney at Law Firm A in which **BERNIER** requested compensation from the National Mortgage Settlement. As grounds for this request, **BERNIER** claimed that Property Two was wrongfully foreclosed upon in 2009 while he was serving on active duty in the United States Air Force in Iraq. In a section of **BERNIER's** email entitled "Remedy Requested," **BERNIER** stated that Property Two had been appraised at a value of $1,050,000 in 2007. In support of his request for compensation, **BERNIER** attached a Certificate of Release or Discharge from Active Duty ("DD 214") that purported to reflect that **BERNIER** had been on active duty with the United States Air Force from July 10, 2008, through March 27, 2010, and a Defense Meritorious Service Medal and Citation purporting to reflect that **BERNIER** had received the medal for conduct in Iraq from July 2008 to March 2010. These documents were forgeries. In truth and in fact, **BERNIER** was not on active or reserve duty in any branch of the United States Armed Forces during the time period July 2008 to March 2010.

7. In or about April 2014, **BERNIER** sent a letter to Capital One and communicated by phone with representatives of Capital One in which he requested compensation for the wrongful foreclosure on Property One in 2008 while he was deployed by the United States Air Force in Iraq. Enclosed along with the letter were the above-described forged DD 214 and Defense Meritorious Service Medal and Citation. **BERNIER** further stated that Property One had been appraised for $959,000.

8. Capital One and JP Morgan Chase were unable to substantiate **BERNIER's** claim that he had been on active duty overseas when Property One and Property Two were foreclosed

3

upon. Capital One and JP Morgan Chase contacted CRT and requested assistance in assessing the accuracy of **BERNIER's** assertions.

9. On or about April 8, 2014, a trial attorney at CRT contacted **BERNIER** by phone and requested additional information to substantiate his claim that he had been on active duty overseas at the time Property One and Property Two had been foreclosed upon.

10. On or about April 9, 2014, a trial attorney in CRT in the District of Columbia emailed **BERNIER** and requested documentation to substantiate **BERNIER's** claim that he had been deployed overseas during the time his properties were foreclosed upon. In response, on the same day, **BERNIER** sent by email the above-described forged DD 214 and Defense Meritorious Service Medal and Citation.

11. In or about May 2014, a trial attorney at CRT communicated to **BERNIER** that the trial attorney had been unable to verify **BERNIER's** claimed period of military service in the Defense Manpower Data Center ("DMDC"). The DMDC is an agency within the United States Department of Defense that serves as the repository for, among other things, records relating to service personnel.

12. In response, on or about June 16, 2014, **BERNIER** sent by email to the trial attorney in CRT over 200 pages of documents, including documents purporting to be orders from the United States Air Force directing **BERNIER** to report to active duty on April 12, 2008 in support of Operation Iraqi Freedom and the above-described forged DD 214 and Defense Meritorious Service Medal and Citation. The documents purporting to be orders from the United States Air Force were forgeries. In addition, **BERNIER** attached a number of articles and other documents in which the accuracy of DMDC records was called into question.

13. On or about July 23, 2014, **BERNIER** sent by email to a lawyer at Law Firm A

4

the above-referenced forged United States Air Force orders, DD 214, and Defense Meritorious Service Medal and Citation.

14. On or about December 22, 2014, **BERNIER** sent by email to the trial attorney in CRT a reminder of his outstanding claim for compensation. Attached to this email were documents purporting to be a March 30, 2009 Officers Performance Report reflecting that he had been rated as having met standards for the period March 30, 2009, to March 30, 2010, and the above-referenced forged DD 214 and Defense Meritorious Service Medal and Citation. **BERNIER** also included a letter purporting to be from an employee in the National Personnel Records Center ("NPRC") sending these documents to **BERNIER**. The Officers Performance Report and the letter from the NPRC were forgeries.

15. On or about January 28, 2015, in a further attempt to remind CRT of his pending request for compensation, **BERNIER** mailed to the trial attorney at CRT the above-referenced forged DD 214, United States Air Force orders, and Defense Meritorious Service Medal and Citation.

16. On or about March 27, 2015, a Special Agent with the United States Department of Justice Office of the Inspector General ("Special Agent") had a phone conversation with **BERNIER** during which the Special Agent posed as a CRT paralegal. During this call, **BERNIER** confirmed that he had been deployed overseas for the Air Force from July 10, 2008 to March 27, 2010. In response to questions about the amount for which **BERNIER** was seeking compensation, **BERNIER** responded that the outstanding principal on his mortgage for Property Two was $600,000.

17. On or about April 3, 2015, as a follow up to **BERNIER's** conversations with the Special Agent posing as a CRT paralegal, **BERNIER** emailed the CRT trial attorney a link to an

online document repository that contained the forged records previously provided to CRT.

18. On or about April 28, 2015, the Special Agent, who identified herself as such, interviewed **BERNIER** in person in Fort Lauderdale, Florida. At the outset of the interview, the Special Agent informed **BERNIER** that there were serious concerns about inaccuracies on the paperwork he had submitted to the Department of Justice, Capital One, and JP Morgan Chase, including the dates of service listed on his DD 214. In response, **BERNIER** stated that the dates of service listed on the DD 214 were accurate and, more specifically, **BERNIER** informed the Special Agent that he had been recalled to active duty in the Air Force in 2008. When asked by the Special Agent why his military service from 2008 to 2010 was not verifiable via the DMDC, **BERNIER** responded that it was likely because he was assigned to a special operations mission during his 2008 deployment to Iraq. At approximately this point in the interview, the Special Agent urged **BERNIER** to help the agents help him by ceasing his repeated false statements. Nonetheless, when asked about his prior employment at Hospital A in Chelan, Washington, **BERNIER** stated that he had been employed there from January 2007 to June 2008. In truth and in fact, **BERNIER** had been employed by Hospital A from January 2008 to September 2009.

19. Capital One generally paid a fixed amount to compensate eligible claimants of $125,000. Capital One did not make any payment to **BERNIER**.

20. JP Morgan Chase compensated eligible claimants for an amount up to the value of the foreclosed property. JP Morgan Chase did not make any payment to **BERNIER**. Had **BERNIER's** request for compensation been approved, JP Morgan Chase would have compensated **BERNIER** for an amount up to the post-foreclosure sale price of the homes, which was $605,000.

21. Through the foregoing, **BERNIER**, in the District of Columbia and elsewhere, in

a matter with the jurisdiction of the executive branch of the government of the United States, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in that, among other things, he had been deployed overseas serving in the United States Air Force from July 10, 2008 through March 27, 2010 when, in truth and in fact, he had not. These false representations were material as they would have been capable of influencing the government's decisions and activities with respect to his claims under the National Mortgage Settlement and Capital One Settlement and would have, if true, entitled him to payments under those settlements.

CHANNING D. PHILLIPS
United States Attorney

By: *[signature]*

Peter C. Lallas
New York Bar No. 4290623
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W.
Washington, DC 20530
(202) 252-6879
Peter.Lallas@usdoj.gov

## Defendant's Acceptance

I have read the preceding seven pages which constitute the government's Statement of the Offense and have discussed it with my attorney, Jonathan Jeffress. I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 4/20/2016

David Bernier
Defendant

## Attorney's Acknowledgment

I have read each of the preceding seven pages which constitute the government's Proffer of Proof, reviewed them with my client, and discussed the provisions of the proffer with him, fully. These pages accurately and completely set forth the government's proof as I understand it.

Date: 6/20/16

Jonathan Jeffress
Attorney for David Bernier