**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Case No. 16-00088 (CKK)** |
| **v.** | : | |
| | : | |
| **DAVID BERNIER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

      The defendant, David Bernier, forged documents and made false statements to financial institutions and the Department of Justice in an effort to obtain more than $700,000 to which he was not entitled from the National Mortgage Settlement—a fund intended to provide relief to distressed borrowers caused by foreclosure and other abuses by the country's five largest mortgage servicers.  In 2017, this Court sentenced him to six months' imprisonment followed by 24 months of supervised release, reflecting a substantial downward variance.  Beginning less than three weeks after his release, the defendant repeatedly violated the supervised release terms imposed by this Court, including using a computer and the internet without authorization, maintaining multiple unreported email accounts, and lying to Probation about his conduct—violations indicative of fraudulent activity.  The defendant's supervised release should be revoked and he should be re-sentenced to seven months' imprisonment.

      **I.**       **Background**

      On June 20, 2016, the defendant pled guilty to one count of false statements, in violation of 18 U.S.C. § 1001, related to his attempt to fraudulently receive compensation to which he was not entitled from the National Mortgage Settlement. The defendant forged documents regarding his military service and then sent them to major financial institutions, the Department of Justice, the agency within the United States military charged with making corrections to the military

records of service members, and a United States senator. He also lied about his military service when he communicated with Department of Justice personnel, including individuals who played a role in administering his claim for compensation and a Special Agent with the Department's Office of the Inspector General. Had his fabrications not been detected, he would have wrongfully received $730,000.

Pursuant to the U.S. Sentencing Guidelines, when the defendant was sentenced, his advisory guideline range was 24 months to 30 months, which was driven largely by the intended loss amount. *See* ECF No. 65, at p. 2; PSR ¶ 107. The government recommended a one-year prison sentence. *See* ECF No. 24. The defense asked for probation. *See* ECF No. 26. On January 6, 2017, the Court sentenced the defendant to six months' incarceration to be followed by 24 months of supervised release.

While the defendant was still incarcerated and, thus, before his supervised release commenced, the United States Probation Office for the District of Columbia filed a Petition requesting that the conditions of his supervision be modified to require that he participate and comply with the requirements of the Computer and Internet Monitoring Program. The defendant signed a Waiver of Hearing to Modify Conditions of Supervised Release. Accordingly, on June 23, 2017, the Court modified the terms of his supervision to require the Computer and Internet Monitoring program condition.

The defendant was released from federal prison on August 4, 2017. He violated the terms of his supervised release almost immediately. Specifically, within 21 days of his release, he possessed an unauthorized laptop and lied to his Probation Officer regarding the laptop. He continued to incur violations for several months, prompting the Court to schedule an April 12, 2018, Hearing on Violation. When the defendant contested all of the violations at that hearing, the

Court scheduled an evidentiary hearing for June 7, 2018. By the time of the evidentiary hearing, where several witnesses testified, the defendant was alleged to have committed a total of 14 violations.

On August 23, 2018, the Court issued a 34-page memorandum opinion addressing each of the 14 alleged violations. The Court concluded that the defendant violated the following conditions: No. 1 (possession of an unauthorized laptop); No. 2 (making untrue statements to the Probation Officer about that laptop); No. 3 (failure to provide verification of narrative therapy); No. 5 (possession of multiple unreported email accounts); No. 6 (unauthorized travel to New Hampshire); No. 7 (denying the alteration of a Computer and Internet Use Questionnaire in connection with Violation No. 5); No. 9 (using an unapproved storage device); No. 10 (accessing a website that was not reported to the Probation Office); No. 11 (accessing the Internet without authorization – filing a corporate annual report); No. 12 (accessing the Internet without authorization – sending the Bureau of Prisons email); No. 13 (unauthorized use of a computer at the Probation Office); and No. 14 (failure to truthfully answer questions about the computer usage at the Probation Office, in connection with Violation No. 13). In its opinion, the Court noted that the defendant's supervision would be revoked.

## II.     Government's Position on Sentencing

The government recommends a sentence of imprisonment of seven months followed by two years of supervised release.  Such a sentence is sufficient but not greater than necessary to reflect the nature and circumstances of the offenses and the history and characteristics of the defendant, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.  *See* 18 U.S.C. § 3583(e); 18 U.S.C. §§ 3553(a)(1); (a)(2)(B); (a)(2)(C). Such a sentence also falls within the sentencing range established in the Sentencing Guidelines. 18 U.S.C. § 3583(e); 18 U.S.C. § 3553(a)(4).

**A.  Sentencing Guidelines Calculation**

Under the Sentencing Guidelines, the defendant's violations are considered Grade C violations. *See* U.S.S.G. § 7B1.1(a)(3).[1]   The Guidelines recommend that, upon a finding of a Grade C violation, the Court may revoke the defendant's supervised release. *See* U.S.S.G. § 7B1.3(a)(2).  Based on the defendant's criminal history category of I, the Sentencing Guidelines recommend a period of imprisonment of 3 to 9 months.  *See* U.S.S.G. § 7B1.4(a).[2]  The maximum term of imprisonment that the Court can impose is 24 months. *See* 18 U.S.C. § 3583(e)(3).

**B.  The Factors Under 18 U.S.C. §§ 3583(e)(3)**

**1.  Need for the Sentence to Consider the Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The defendant engaged in a multi-year scheme to defraud financial institutions. He ultimately failed in his effort to fraudulently obtain money, though it certainly was not for a lack of trying. He forged numerous military records and sent them to financial institutions, the Department of Justice, an agency of the U.S. military, and a United States senator. He also lied to

---

[1] The Court's memorandum opinion classified the defendant's violations as Grade B violations. *See* ECF No. 32 at p. 32. The opinion certainly noted the existence of troubling evidence suggesting the defendant engaged in behavior that would constitute Grade B violations, i.e., federal, state, or local offenses punishable by a term of imprisonment exceeding one year. *See* U.S.S.G. § 7B1.1(a)(2). For example, Officer Howe received an email from the CPA of a company in Birmingham, Alabama, stating that unauthorized checks in the amounts of $41,350 and $19,550 had almost been mailed to the defendant because an email that appeared to be sent by the CPA to the accounts payable department asked that a couple of checks be cut and overnighted to the defendant. Fortunately, the CPA intercepted the checks before they were mailed.  Similarly, a Colorado company reported that it was the victim of theft involving an incident where a company check in the amount of $86,220 was mailed to the defendant, who attempted to cash it. Fortunately, the bank put a hold on the check before the defendant was able to cash it. The defendant explained to Officer Howe that he had been expecting a check for professional fees from a loan company. He also claimed to be the victim of identity theft. ECF No. 32 at pp. 25-29. However, after considering all of the evidence presented at the hearing, the Court concluded that the government had not established by a preponderance of the evidence that the emails, which triggered checks being written by companies for the purposes of being sent to the defendant, were in fact tied to the defendant. In doing so, the Court found the defendant's allegation of identity fraud "unbelievable," noting that "it is implausible that a hacker would send a check to his 'victim.'" ECF No. 32 at p. 29. Because the Court concluded that the government did not satisfy its burden of proving that the defendant engaged in conduct that would constitute a federal, state, or local offense punishable by a term of imprisonment exceeding one year, the government submits that the numerous violations which form the basis for the defendant's revocation are all Grade C violations.

[2] In the Court's opinion, it noted that the guideline range is four to ten months; however, that range is principled upon a Grade B violation, not a Grade C violation.

a federal agent when confronted regarding the inaccuracies of the records he had submitted as part of the fraud. When he was sentenced, the Court and the government credited him with his military service. He served the nation for more than 20 years, which was one reason the government asked for a 12-month sentence, i.e., a sentence well below the bottom of the 24-30 month guideline range. *See* ECF No. 24 at p. 8 ("[H]e did serve in the Air Force for 20 years and received a number of decorations and commendations for his service. It is likely that this military service in a way facilitated his commission of the instant offense in that during his actual service he received true versions of many of the documents he forged here. And that is certainly concerning, but it is also counterbalanced by the fact of his lengthy service in the military.") Similarly, the Court granted a downward departure/variance in part because of the defendant's military service.

Sadly, despite completing a six-month prison sentence, the defendant's post-incarceration behavior has involved numerous acts of deception.

Within weeks of being released from custody, the defendant violated the terms of his supervised release when he possessed a computer without permission. When confronted about it, instead of accepting responsibility for his transgression, the defendant claimed the computer belonged to his brother. His brother said the computer belonged to the defendant and that he did not know why the defendant claimed otherwise.

Then, approximately one month after he lied to the Probation Officer regarding the computer, the defendant completed a questionnaire that required him to list all of his email accounts. He only listed one. Several months later, the Probation Officer noticed that seven email accounts were present on his cellphone, including the lone one identified on the questionnaire. The defendant acknowledged having multiple email addresses. He then emailed the Probation Officer and her supervisor a new questionnaire listing five email accounts instead of one; the questionnaire

had the same date as the one he originally submitted. His Probation Officer confronted him about altering the original form, but he denied it, notwithstanding the fact that the Probation Officer had received the original questionnaire several months earlier, which only listed one email address.

 Approximately three months later, the defendant sent an email to the Bureau of Prisons containing a draft letter asking that a prison official confirm the defendant had signed the Waiver of Hearing to Modify Conditions of Supervised Release under duress. At the hearing, the prison official testified, "I knew right away when I read it[,] it was definitely not true." *See* ECF No. 65, at p. 20.  The prison official also testified that he found the draft letter, which was on Bureau of Prisons letterhead, "deceptive" given that the letter raised the issue of duress even though "[t]here was no duress at all." *Id*. at 21.

Then, the following month, the defendant told his Probation Officer that he only looked at his Hotmail account while at the probation office even though a review of the computer while he was present showed other websites visited as well as an attempt to erase the browsing history.

The defendant's behavior with respect to all of these violations shows a consistent pattern of deception, similar to the pattern he showed when he engaged in the scheme where he attempted to fraudulently obtain approximately three-quarters of a million dollars that was meant for veterans whose homes had been wrongly foreclosed upon during their service. Moreover, his failure to disclose additional electronic devices and email addresses while on supervision is concerning given that he used a computer and the internet as tools to commit the 18 U.S.C. § 1001 offense to which he pled guilty. A sentence of seven months' incarceration to be followed by two years of supervised release would properly consider the nature and the circumstances of the violations and the characteristics of the defendant.

### 2.  Need for the Sentence to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

Unfortunately, the original six-month sentence imposed by the Court did not adequately deter the defendant. Within weeks of his release from prison, he started violating the terms of his supervised release. Moreover, many of his violations involved statements and acts of the same deceptive nature and character of the repeated false representations he made in his effort to fraudulently obtain $730,000.  Because he has demonstrated a willingness not to comply with his supervision, a seven-month sentence is appropriate to hopefully deter him from engaging in unlawful conduct. Moreover, a 24-month term of supervised release is necessary to ensure that the Court can closely monitor the defendant's behavior, his use of technology and the Internet, and his financial transactions.

## CONCLUSION

For the reasons noted above, the government respectfully recommends that the Court sentence the defendant to seven months of incarceration to be followed by 24 months of supervised release.

Respectfully submitted,

JESSIE K. LIU
United States Attorney

By:      /s/
_____
Kondi J. Kleinman
California Bar #241277
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Kondi.Kleinman2@usdoj.gov
(202) 252-6887