**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) |
| | )     Criminal No. 16-88 |
| | ) |
| DAVID BERNIER, | ) |
|     Defendant. | ) |
_____ )

## <u>MEMORANDUM OPINION</u>
### (July 18, 2019)

This matter is before the Court on a remand from the United States Court of Appeals for

the District of Columbia Circuit (the "Circuit Court'). On June 7, 2018, this Court convened an

Evidentiary Hearing on Defendant's alleged violations of his supervised release. Both Defendant

David Bernier ("Defendant" or "David Bernier") and the Government introduced witness

testimony and exhibits, but the Defendant elected not to testify. Transcript of June 7, 2018

Evidentiary Hearing ("6/7/18 Tr.") at 153. On August 23, 2018, the Court issued its [65]

Memorandum Opinion and [64] Order finding that David Bernier had violated the conditions of

his supervised release with regard to Violations Nos. 1-3, 5-7, and 9-14, as alleged by the Probation

Office in a series of memoranda presented to the Court. The Court revoked David Bernier's

supervised release and imposed a six-month sentence. *See* November 8, 2018 Judgment for

Revocation of Supervised Release, ECF No. 75. Defendant appealed the revocation of his

supervised release and imposition of a sentence.

On April 5, 2019, the Circuit Court issued an unpublished decision affirming the revocation

of Defendant's supervised release but remanding "[a]ppellant's claims of ineffective assistance of

counsel" for "further factual development for the reasons set forth in the memorandum filed

simultaneously herewith." *See* Judgment and Memorandum in No. 18-3083, ECF No. 90-1.[1] In order to further develop the record regarding David Bernier's ineffective assistance of counsel claims, this Court held a second Evidentiary Hearing on June 5, 2019. At the June 5, 2019 Evidentiary Hearing, David Bernier was represented by counsel, Mr. Gregory Smith, and he and his brother, James Bernier, testified on Defendant's behalf, while David Bernier's former counsel, Mr. Steven Kiersch, testified for the Government.[2]

For the reasons explained herein, David Bernier's claims of ineffective assistance of counsel are DENIED.

## I. BACKGROUND

Prior to the June 7, 2018 Evidentiary Hearing, this Court set an April 12, 2018 Status Conference with the parties to discuss the ten violations of Defendant's supervised release, which had been alleged by the Probation Office. Because Defendant contested the ten violations, the Court set this matter for a June 7, 2018 Evidentiary Hearing, where each side could present witness testimony and exhibits. At the June 7, 2018 Hearing, David Bernier was represented by CJA Attorney Steven Kiersch. Subsequent to the June 7, 2018 Hearing, but before this Court rendered its decision on whether David Bernier had violated his conditions of supervised release, Defendant submitted two *ex parte* letters challenging his legal representation. *See* Defendant's *Ex Parte* Letters, ECF No. 61 (filed under seal). On July 20, 2018, this Court held a Sealed *Ex Parte* Hearing to permit David Bernier to discuss on the record his allegations that his counsel had failed to: (1)

---

[1] The Judgment was remanded further for correction of typographical errors. *See* Amended Judgment, ECF No. 87 (correcting errors).

[2] David Bernier appeared by videoconference during the hearing. He affirmed that he was willing to waive his presence in the courtroom and appear via videoconference. *See* 6/5/19 Tr. at 4:23-5:8 (indicating the line numbers). During the June 5, 2019 Evidentiary Hearing, the Court found the attorney client privilege between David Bernier and his prior counsel Steven Kiersh was waived. 6/5/19 Tr. at 143:13-14.

contact a witness to obtain a statement; (2) ask certain questions of witnesses; and (3) introduce

certain documents. Subsequent to the hearing, this Court denied David Bernier's claims of

ineffective assistance of counsel, finding that:

> [C]ounsel's actions before and during the June 7, 2018 evidentiary hearing — including
> his decision not to rely on certain documents because they did not further his client's case,
> or were not relevant, or were inadmissible without supporting testimony; determining
> which questions to ask the witnesses; and advising Defendant of the possible detriment if
> he testified were tactical decisions. [Furthermore,] [a]t the June 7, 2018 evidentiary
> hearing, the Court inquired whether it was Defendant's decision not to testify and whether
> such decision was made voluntarily and willingly, and Defendant answered all three
> questions affirmatively. At the end of the sealed motions hearing, the Court concluded
> that Defendant failed to establish that his counsel's performance was deficient, and
> Defendant's claims of ineffective assistance of counsel were unwarranted and unsupported
> by the record in this case.

Order, ECF No. 62 (filed under seal).

On August 23, 2018, this Court issued its decision that David Bernier had violated the

conditions of his supervise release, revoked his supervision and set a schedule for submission of

documentation relevant to Defendant's resentencing. *See* Memorandum Opinion, ECF No. 65;

Order, ECF No. 64; Scheduling Order, ECF No. 66. On October 30, 2018, David Bernier was

sentenced to six months incarceration, but he was permitted to delay his self-surrender and the

commencement of his incarceration. Defendant indicates that his scheduled release date

(according to the BOP website) is July 21, 2019.

Defendant appealed from this Court's revocation of his supervised release, which was

upheld by the Court of Appeals for the D.C. Circuit, and he alleged ineffective assistance of

counsel. Defendant's claim of ineffective assistance of counsel was remanded to this Court for an

evidentiary hearing to resolve the following two issues "(1) that [Defendant's] attorney conceded

guilt to certain violations during the revocation hearing, and (2) that his attorney failed to provide

him with the revised terms of his supervised release conditions after those conditions materially

changed in April 2018, leading to additional violations." Memorandum, No. 18-3083, ECF No. 90-1. The Circuit Court "decline[d] to resolve the matter because it require[d] further factual development" and accordingly, the case was remanded for an evidentiary hearing. *Id.* at 3-4.

## II. LEGAL STANDARD

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted); *Hinton v Rudasill*, 624 F. Supp. 2d 48, 52 (D.D.C. 2009). For the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential" and defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotation marks and citation omitted). The Court must consider "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is the defendant's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Furthermore, the defendant must meet the second *Strickland* prong and "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 669. To find prejudice, the petitioner must show that there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted). An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong.

## III. ANALYSIS

On June 5, 2019, this Court held an evidentiary hearing to further develop the record regarding Defendant's claims of ineffective assistance of counsel, in accordance with the Circuit Court's remand. The scope of the evidentiary hearing encompassed two claims of ineffective assistance of counsel relating to: (1) counsel's concession of guilt to certain violations during the revocation hearing; and (2) counsel's failure to provide the Defendant with the revised terms of his supervised release conditions after those changed in April 2018, which allegedly led to additional violations. In connection with that Hearing, the Court credits the testimony of Mr. Steven Kiersh, Defendant's former counsel. The Court credits the majority but not all testimony by David Bernier and his brother James Bernier, particularly as to some inconsistencies in their testimony reflected in the recitation of facts to follow. The Defendant's exhibits numbered 1 through 28 were admitted into evidence. The Government did not move for the admission of any exhibits into evidence.

### A. Failure to Provide Revised Terms of Supervised Release Conditions

Pursuant to the Circuit Court's remand, this Court is tasked with examining whether David Bernier's attorney "failed to provide him with the revised terms of his supervised release conditions after those conditions materially changed in April 2018, leading to additional violations." Judgment and Memorandum, No. 18-3083, ECF No. 90-1. This claim was addressed

briefly by David Bernier during the June 5, 2019 hearing. Defendant acknowledged that, at the end of the April 12, 2018 hearing, the Court said it would impose some new conditions that had not previously been in place. *See* 4/12/18 Transcript ("4/12/18 Tr.") at 77:10-13. These conditions were memorialized in a [46] Memorandum Opinion and Order dated April 13, 2018. *See* 4/12/18 Tr. at 77:14-21. The three conditions: (1) prohibited Defendant from engaging in business or volunteer activities that required him to consummate or negotiate financial contracts without the permission of the probation officer; (2) required that Defendant provide the probation officer with access to any requested financial information and authorize the release of any financial information; and (3) prohibited Defendant from accessing the Internet except with receiving advance permission and supervision from the Probation Office. Memorandum Opinion and Order, ECF No. 46, at 3; 4/12/18 Tr. at 77:22-25.[3]

Defendant indicated that he was charged with two additional violations — Nos. 13 and 14 — which were alleged to have occurred on May 15, 2018, when Defendant went to the Probation Office and accessed a computer without advance permission (a violation of the aforementioned third condition) and did not truthfully answer questions about the access (a violation of his standard conditions). 6/5/19 Tr. at 78:10-22. Defendant stated that he did not receive a copy of the April 13, 2018 Memorandum Opinion and Order "until the end of June after the evidentiary hearing, when this document was discussed[.]" 6/5/19 Tr. at 78: 1-9. Without directly stating so, Defendant implied that because he did not receive a memorialization of the three conditions until sometime

---

[3] The third condition is the only one at issue in this case. While on supervised release in Maine, Defendant was subject to a condition of supervision involving Computer and Internet Monitoring. This condition was imposed as a prerequisite to the Defendant's supervision being transferred to the Maine Probation Office, and it related to David Bernier's underlying charge of Making False Statements, whereby he used a computer to create fraudulent documents relating to his military service for the purpose of claiming compensation from the National Mortgage Settlement.

in June 2018, he was unaware that he had violated the third condition when he accessed information from the Probation Office in May 2018. Defendant's implication fails as he was present in the courtroom on April 12, 2018, when this third condition was discussed in detail.

At that April 12, 2018 Status Hearing, Defendant's Probation Officer from the District of Maine raised the issue of restricting Defendant's possible access to the Internet. The Court opined that during the time from the status hearing (April 12, 2018) though the upcoming evidentiary hearing (set for June 7, 2018), the Defendant "should not be using the computer since we're having problems." *See* 4/12/2018 Transcript ("4/12/18 Tr.") at 41:14-22. David Bernier's Probation Officer from the District of Columbia proposed that David Bernier, who was already "under a computer-monitoring restriction," be restricted from Internet access until the violations had been resolved so as to ensure the safety of the community, and she noted that this could be accomplished through a modification of his conditions. 4/12/18 Tr.at 42:2-14. Defendant, through counsel, stated that "the only modification that we would ask for is that [David Bernier] be allowed to use the computer at the . . . United States Probation Office, under the supervision of Ms. Phillips." 4/12/18 Tr. at 43:1-4.

In response to Defendant's statement, Ms. Phillips noted that this condition was already in force insofar as "the only time that [Probation] ha[s] actually permitted him to use the Internet has been at our office" so she concluded that this was merely a reiteration of what had already been implemented. 4/12/18 Tr. at 43:6-10. The Court agreed that the condition involving Probation Office approval and monitoring was not being changed per se, but rather, the Court was clarifying that "he doesn't have access to the Internet otherwise." 4/12/18 Tr. at 43:11-16. Defendant, through counsel, agreed to the condition "as long as we keep this provision [regarding Defendant's Internet access at the Probation Office] in effect." 4/12/18 Tr. a 43:17-18. This condition

involving restrictions on Defendant's Internet access was memorialized subsequently as follows: "[David Bernier] must not access the Internet except with receiving advance permission and supervision from the United States Probation Office." Memorandum Opinion and Order, ECF No. 46, at 3.

The Court notes that Defendant was privy to the entire discussion at the April 12, 2018 Status Hearing regarding restrictions on his Internet usage. Furthermore, his need to obtain Probation Office approval and monitoring when he used the computer at the Probation Office was reiterated. Through counsel, he agreed to the restriction on his Internet usage so long as he could use the computer at the Probation Office, with the proviso that he had to seek permission and was subject to monitoring. Accordingly, David Bernier's claim that he was unaware of this condition until after he incurred a violation of the condition (on May 15, 2018) is contrary to the record in this case and without merit, and this claim shall be DENIED.

**B. Concession of Guilt to Some Violations**

Pursuant to the Circuit Court's remand, this Court is tasked with examining David Bernier's claim that his attorney proffered ineffective assistance of counsel based on his concession of guilt to certain violations during the revocation hearing.

**1. Counsel's Performance – Overall Litigation Strategy**

At an April 12, 2018 Status Conference, the parties discussed Defendant's ten alleged violations of the conditions of his supervision. Defendant, through counsel, contested all ten violations, 4/12/18 Tr. at 6:3-4, which resulted in this Court setting a June 7, 2018 Evidentiary Hearing to address Defendant's alleged violations of supervised release, which then totaled fourteen. In contrast, a review of Mr. Kiersh's closing at the June 7, 2018 Evidentiary Hearing indicates that he acknowledged that: "[Defendant has committed technical violations [and] [w]e're

not going to dispute that. We're not going to come before the Court and argue things that are in contradiction to the facts that are before the Court." 6/7/18 Tr. at 178:9-12. The technical violations that counsel had referenced prior to that acknowledgment included: (1) David Bernier's travel to New Hampshire without permission; (2) possession of a second computer; (3) use of a thumb drive; (4) failure to "verify" the narrative therapy; and (5) creation of "BOP" letterhead for a letter drafted for Mr. Dempsey.[4] But, even with these "concessions" on technical violations, Mr. Kiersh proffered mitigating circumstances relevant to these violations and testimony by Dr. Nicoloff regarding narrative therapy as a modality. *See* 6/7/18 Tr. at 163-182.

David Bernier claims that he never told Mr. Kiersh to concede any violations. 6/5/19 Tr. at 77:4-9; 80 ("I told him that he screwed up the entire closing and conceded to violations that I didn't give him permission to do so."). *But see* 6/5/19 Tr. at 92-93 (acknowledging that at sentencing, he admitted to traveling to New Hampshire without permission and to using a thumb drive); 10/30/18 Sentencing Hearing Transcript ("10/30/18 Tr.") at 16:18-25 ("I do admit to some of the violations, but I would be lying to the Court if I accepted responsibility for all of the violations[.]"). When asked why he conceded some violations at the June 7, 2018 Evidentiary Hearing, after contesting all violations in April 2018, Mr. Kiersh explained that "when this information [regarding the ten violations] first came in, before [he] had a chance to evaluate it, [they] were asking for a hearing [and] [t]hat's why [he] said that [they] were going to contest all the violations." 6/5/19 Tr. at 137:12-17.

Because David Bernier indicates that his counsel proceeded in a manner which was not consistent with his wishes, the Court must make a credibility determination as to whether Mr.

---

[4] With regard to the violations that were "conceded" by counsel in whole or in part, the Court will examine later in this Opinion whether there was any prejudice to the Defendant.

Kiersh discussed his litigation strategy with his client, and they had a meeting of the minds or not.[5]

David Bernier testified that with regard to the first ten violations, he gave his counsel a binder with a written summary and list of proposed cross-examination questions to use in challenging the Probation Office's position. 6/5/19 Tr. at 54-55. The testimony he had prepared for Mr. Kiersh admittedly relied on witnesses answering the way he thought they should, not the way they actually did. 6/5/19 Tr. at 94. Mr. Kiersh testified that he went through the binder thoroughly by himself and also with David Bernier. 6/5/19 Tr. at 126-127. He indicated that he considered what was presented but "ultimately, the strategy and the tactics [would] be those that [he] believe[d] [we]re in the [client's] best interest based on [his] experience as a criminal defense litigator." 6/5/19 Tr. at 127:15-21. Mr. Kiersh's background includes 35 years of practicing as a criminal defense lawyer, with over 100 jury trials, and teaching trial practice and trial advocacy at various law schools and programs for practicing attorneys. 6/5/19 Tr. at 118-119.

At the June 7, 2018 Evidentiary Hearing, Defendant, through counsel, challenged the more serious violations (for example, the Colorado and Alabama "wire fraud" incidents and the Florida arrest) but conceded some of the technical violations. Mr. Kiersh "thought that [Defendant] would be better off conceding some of the technical violations [for example, the trip to New Hampshire and the use of a USB drive] to avoid violations on the more serious charges." 6/5/19 Tr. at 138:9-12, 140. Mr. Kiersh believed there was a "meeting of the minds" as to approaching the case by challenging the major charges and focusing on mitigation of the technical violations to try to keep

---

[5] The Court notes that David Bernier is a sophisticated, well-educated individual. *See* Presentence Investigation Report, ECF No. 22 (noting that Defendant was awarded a Doctor of Philosophy, served in the military, and worked in a professional capacity). Defendant is familiar with the criminal justice system insofar as he was convicted of Making False Statements, in violation of 18 U.S.C. § 1001; he served a period of incarceration; and he had been on supervised release subject to conditions of supervision since August of 2017.

Defendant from incurring any jailtime. 6/5/19 Tr. at 129-130. "And I said that - - again, the three major ones, we're going to fight those. We're going to contest those. But on the technical violations, we should not make an attempt to fight back - - I can't say every one, but not to fight back on those, because some of them were clearly violations." 6/5/19 Tr. at 131. Mr. Kiersh looked at the totality of the alleged violations and characterized them as either serious violations, which he "was looking to beat back" or technical violations, for which they could "present mitigation evidence." 6/5/19 Tr. at 128. According to Mr. Kiersh, Defendant acknowledged committing the technical violations. 6/5/19 Tr. at 130:24-131:1. Mr. Kiersh explained to David Bernier that as part of mitigation, he would have to accept responsibility, because he did not see Defendant prevailing "on the excuses that he outlined in some of his drafts [in the binder]." 6/5/19 Tr. at 129-131. Mr. Kiersh's stated goal with regard to this matter was to avoid imposition of incarceration for David Bernier, which was consistent with the goal expressed to him by David Bernier. 6/5/19 Tr. at 127:22-128-1. In contrast, at the June 5, 2019 Evidentiary Hearing, David Bernier testified that his "main goal [at the revocation hearing] was for justice." 6/5/19 Tr. at 91:21-92:5.

David Bernier testified that Mr. Kiersh "didn't really discuss" with him that he thought "the best way to proceed was to attack the serious claims [such as the wire fraud and Florida arrest] and to try to undermine them, the Government's presentation of those claims." 6/5/19 Tr. at 98:12-17. However, when asked on cross-examination if this was a "complete surprise" to him when it happened at the hearing, he responded "no," and elaborated that he was expecting his counsel to address every violation with equal force. 6/5/19 Tr. at 98:18-23. David Bernier testified that Mr. Kiersh "never really explained a strategy" so he "[couldn't agree with something that he didn't [get] brief[ed] [on]." 6/5/19 Tr. at 99: 9-15.

In contrast, Mr. Kiersh noted that if there had been a conflict in the way in which he and David Bernier wanted to approach the case, he would have put it on the record that Defendant disagreed with him. 6/5/19 Tr. at 132-133. He opined that "strategy and tactics" are decisions for counsel "with consultation of the person who's facing the prosecution," which is how he proceeded. 6/5/19 Tr. at 139 -141. "If I strategically and tactically decide it's in your best interest to not contest or make excuses for the technical violations but go after the serious violations, I will discuss that with the client. That's what I did with Mr. Bernier." 6/5/19 Tr. at 14:20-24. Mr. Kiersh was cross-examined on why — if they had agreed on a strategy — David Bernier claimed Mr. Kiersh was ineffective immediately after the evidentiary hearing. Mr. Kiersh opined that "Mr. Bernier was constantly changing his mind about things. And whatever decision he made, he would then try to change it after he made the decision, always trying to gain a tactical advantage. . . [and] he clearly saw it wasn't going his way during the hearing  - - ." 6/5/19 Tr. at 143:13-23. The Court finds credible Mr. Kiersh's statements that he discussed overall legal strategy with David Bernier and further, that their agreement at that time as to how to proceed was by contesting the more serious violations while proffering mitigation of the technical violations.

The Court notes that Defendant had the opportunity to testify on his own behalf at the June 7, 2018 evidentiary hearing, but he declined to do so. 6/7/18 Tr. at 153:6-20.  In contrast (and perhaps in hindsight), David Bernier stated at the June 5, 2019 Evidentiary Hearing that he had wanted to testify on June 7, 2018, but Mr. Kiersh told him not to and never discussed with him the pros and cons of whether or not to testify. 6/5/19 Tr. at 79:17-80:8; 101:23-102:24 (indicating that Mr. Kiersh did not tell him that testifying with regard to serious allegations such as wire fraud could lead to more trouble). *But see* 6/5/19 Tr. at 102 (testimony by Defendant indicating that he "certainly would not have testified against the wishes of my attorney who was representing me in

that [potential wire fraud] matter" and would have "deferred" to his counsel about "not disclosing any information that could be potentially harmful."); 6/7/18 Tr. at 153:6-9 (indicating that Mr. Kiersh "discussed with Mr. Bernier that he ha[d] the right to testify if he'd like to" and he had "chosen not to testify"). David Bernier's statement about wanting to testify during the June 7, 2018 Evidentiary Hearing is contradicted by the record. This Court inquired specifically of Defendant as to whether he understood it was his decision whether or not to testify, whether it was his decision not to testify, and whether such decision was made willingly, and David Bernier affirmed each of these statements. 6/7/18 Tr. at 153:10-20.

Moreover, David Bernier did not note his dissatisfaction with his counsel between the April 12, 2018 Status Hearing and the June 7, 2018 Evidentiary Hearing, waiting instead until after the June 7, 2018 Hearing even though he and Mr. Kiersh must have prepared for the June 7, 2018 Hearing, and discussed the overall strategy to be applied; i.e., vigorously contesting the larger violations and offering mitigating factors with regard to the technical violations. Accordingly, considering the record in this case and the testimony by David Bernier and Mr. Kiersh, the Court finds that Defendant fails to meet the first prong under the *Strickland* standard insofar as this Court finds that Mr. Kiersh's performance was reasonable under prevailing professional norms. Mr. Kiersh focused his efforts on rebutting the more serious violations, but he also proffered mitigating circumstances with regard to the more technical violations. To that end, the success of Mr. Kiersh's strategy is demonstrated by this Court's ruling that the following more serious violations did not support the revocation of Defendant's supervised release: No. 4 (unauthorized use of the computer with regard to emails to entities in Colorado and Alabama); No. 8 (commission of a crime in Hollywood, Florida); as well as allegations underlying No. 3 (creation of medical

documents) and No. 12 (creation of BOP letterhead).[6]

The Court found however that the following more technical violations supported the revocation of supervised release: No. 1 (possession of an unauthorized laptop); No. 2 (making untrue statements in connection with Violation No. 1); No. 3 (failure to provide verification of narrative therapy); No. 5 (possession of multiple unreported email accounts); No. 6 (unauthorized travel to New Hampshire); No. 7 (denying alteration of a Computer and Internet Use Questionnaire); No. 9 (using an unapproved data storage device); No. 10 (accessing a website that was not reported to the Probation Office); Nos. 11 and 12 (accessing the Internet without authorization); No. 13 (unauthorized use of a computer at the Probation Office); and No. 14 (failure to truthfully answer questions in connection with Violation No. 13). In support of these violations, Defendant's supervising Probation Officer provided testimony —bolstered in some cases by exhibits admitted into evidence. Additionally, Mr. David Dempsey from the Federal Correctional Institution testified as to the receipt of a letter on BOP letterhead and his prior conversations with the Defendant.

The Court has applied the standard in *Strickland* but notes that Defendant's counsel referenced briefly *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) for the proposition that it was

---

[6] With regard to Violation No. 4, the Probation Office noted that "[i]t appear[ed] that [Defendant] altered his email address and sought funds from three different [entities] with no basis for the funds to be deposited into an account where he is the authorized user." 6/7/18 Tr. at 75. It was established that David Bernier received a check in the amount of $86,220.00 from Adams Country Housing Authority in Colorado, but the bank put a hold on the check, so it was not cashed. Furthermore, a company in Alabama issued but did not mail checks in the amount of $41,350.00 and $19, 550.00 to David Bernier. As such, the allegations in Violation No 4 might have supported an allegation of wire fraud, but Defendant claimed that he had been the victim of identity theft. During the evidentiary hearing Mr. Kiersh established that while there were suspicious emails, law enforcement had reached no conclusion as to who was responsible, and the Colorado case had been closed. Accordingly, the Court found that the Government had not demonstrated Violation No. 4 by a preponderance of the evidence.

inappropriate for Mr. Kiersh to concede certain violations of Defendant's supervised release on ground that this is David Bernier's decision to make, and the attorney's role is simply to assist. 6/5/19 Tr. at 189-191. In *McCoy*, during the guilt phase of a capital murder trial, over the defendant's objections to any admission of guilt, his counsel told the jury that defendant committed three murders. The Supreme Court found that "[t]he Court's ineffective-assistance-of-counsel jurisprudence, [under *Strickland*], d[id] not apply [t]here where the client's autonomy, not counsel's competence, [was] in issue." In the instant case however, the Government asserted that the ineffective assistance of counsel claim is governed by *Strickland*. The Government asserted that *McCoy* "doesn't apply to [this] set of facts [because the issue of who made the decision on how to proceed] comes down to a credibility contest between the Defendant and counsel about what happened before." 6/5/19 Tr. at 208. The Court agrees with the Government's assessment that this issue regarding how decisions were made between counsel and the Defendant and whether there was an understanding on how to proceed is a credibility issue, with David Bernier proffering little information relevant to this inquiry other than his commentary that he never told Mr. Kiersh not to contest the violations.

The vast majority of Defendant's testimony during the June 5, 2019 Evidentiary Hearing focused instead on Defendant's argument that his attorney, Mr. Kiersh, was not adequately vigorous in presenting Defendant's defenses to his claims because he failed to present certain mitigating evidence. These are issues clearly relating to "counsel's competence" under *Strickland*, and the Court will examine next whether there was any prejudice to the Defendant in light of the mitigating evidence that counsel allegedly failed to present with regard to violations that were "conceded."

**2. Was there any Prejudice to the Defendant on Violations that were Conceded**

The Court will address these violations with reference to their previously-assigned violation numbers and a short description. The Court incorporates by reference the entirety of its August 23, 2018 Memorandum Opinion, ECF No. 65, which provides a full description of the violations and explains this Court's credibility determinations.

**a. Violations Nos. 1 and 2 (Unauthorized Use of a Laptop and Untrue Statements to the Probation Officer)**

These violations are predicated on a Computer and Internet Monitoring condition whereby David Bernier could only use and/or possess a computer that had been approved. On August 15, 2017, Defendant reported to the Probation Office with his Dell laptop and his iPhone. At that time, neither David Bernier nor his brother James Bernier informed that Probation Officer that there was another computer at David Bernier's home. 6/5/19 Tr. at 31-32. When the Probation Officer visited Defendant's residence ten days later, she found two laptops in David Bernier's bedroom – the Dell and an ASUS, and Defendant surrendered both computers. Defendant indicated that the ASUS belonged to his brother, James Bernier, but James Bernier's statement to the Probation Officer contradicted that statement. The Probation Office stated further that Defendant apologized subsequently for telling her untrue information, and he explained that his brother used the ASUS computer while he was in prison, in order to assist him with a class reunion, and "upon his release, and having the monitoring condition applied to him, he thought it would be in his best interest to obtain another computer, which would be the Dell computer, based on the [attorney-client] privileged information that was on the ASUS computer." 6/7/18 Tr. at 70:25-71:11.

At the June 5, 2019 Evidentiary Hearing, Defendant, through counsel, indicated that even if this was a technical violation, there were some mitigating circumstances that were not presented to the Court insofar as the medical and legal information on one computer was going to be

16

transferred to the other computer.  Defendant's brother James Bernier testified that there was an oral agreement between the two brothers that James was going to take the ASUS (which contained David's medical records and attorney-client privileged documents) after David transferred some files but before the computer monitoring software was installed, and David was going to use the Dell.  6/5/19 Tr. at 16-19.  James acknowledged that he told the Probation Officer that the ASUS was David's computer, but he stated that was either an error or misunderstanding because the ASUS computer was going to be in his possession after information was transferred between the computers.  6/5/19 Tr. at 18:10-15; 34-36.  When cross-examined as to the time frame of this agreement between the brothers, James Bernier denied that the agreement was made "after the fact," stating instead that:

A. No.  We had the verbal understanding right along.  But when Kate [Probation Officer] actually surprised me with the phone call, I didn't think quick on my feet.  I basically just answered it as it being David's computer, because technically it was David's computer at the time.
Q. Okay.  And so technically, [David] was in possession of two computers on August 15th to August 25th.  Correct?
A. Correct.
Q. Okay.  And in fact, in your testimony on direct, you characterize your response to her as - - when she asked you that question about the ownership of the ASUS computer, you answered the wrong way.  Do you remember that?
A. Correct. Meaning I was thinking that David still owned the computer because I had not fully taken over the computer yet.

6/5/19 Tr. at 36:2-17.  James Bernier indicated that he wrote a letter of support for his brother regarding this violation, and in that letter,  he noted that Ms. Phillips' testimony regarding his conversation with her on the ownership of David Bernier's computer was incorrect.  6/5/19 Tr. at 34-35.  He admitted during cross-examination that the "incorrect part of her testimony" was that the information he himself provided was based on a "misunderstanding" between him and his brother. 6/5/19 Tr. at 35:15-18.  "[T]he information  that I gave was correct in the sense that David did own the computer, but that the computer was going to be - - come into my possession once all

of the stuff that needed to be transferred was transferred into the other computer." 6/5/19 Tr. at

35:18-22. "I answered [the question] how I thought I needed to answer it at the time because that's

how I was viewing it, was it was still David's computer." 6/5/19 Tr. at 39:3-5.

Defendant testified as follows with regard to his possession of an unauthorized laptop and

failure to tell his Probation Officer about this (Violation No. 1 and No. 2):

Q. Okay. So when she sent you an email on August 14th, which is one of your exhibits, and said,
"Bring in the computer that you're going to be using while on supervision," and you brought the
Dell computer - -
A. Right.
Q. - - and left the ASUS computer at home - - right? You led her to believe it was one computer.
Right?
A. I interpreted that question or that statement as to bringing in the electronic devices that I will
be using while on the computer monitoring software conditions [even though supervision had
begun].
Q. And that was only going to be the Dell?
A. That was only going to be the Dell.

6/5/19 Tr. at 105:13-24. David Bernier commented later that "apparently the ownership was

semantics." 6/5/19 Tr. at 106:14-16.

In this case, Defendant was asked to bring into the Probation Office the computers he was

using during supervision, and the evidence in this case indicates that, despite his reliance on

"semantics," Defendant still had the ASUS computer when his supervision started. Accordingly,

the introduction of "mitigating" evidence regarding the fact that confidential medical information

was on the computer and there was an oral plan to transfer the data and give the ASUS computer

to James Bernier does not change the fact that no one notified the Probation Officer about the

existence of the ASUS computer, which is the basis for Violation No. 1. Furthermore, James

Bernier's testimony does nothing to rebut the fact that the ASUS computer was Defendant's

computer; instead, it lends credence to James's original statement to the Probation Officer that the

ASUS computer was David's computer, which supports Violation No. 2. Accordingly, there was no prejudice to Defendant in counsel conceding Violation No. 1.

### b. Violation No. 3 (Failure to Verify Narrative Therapy)

Violation No. 3 is predicated on David Bernier's failure to provide verification of his authorization to participate in narrative therapy after the Probation Office discovered that Defendant was editing word documents containing signatures of various doctors, and he claimed this activity was part of his narrative therapy. David Bernier's therapist, Dr. Nicoloff, testified during the June 7, 2018 hearing that narrative therapy is a treatment modality, but she has not used it with Defendant. While there was no evidence that Defendant sent out any of the documents he created, he was unable to provide the Probation Office with verification from any of his former clinicians or treatment providers regarding his participation in narrative therapy or that it was part of his current treatment regimen.

Dr. Nicoloff testified that Defendant had a binder containing self-help materials, which included information about narrative therapy. 6/7/18 Tr. at 115-116. According to David Bernier, his Probation Officer retained the binder for about a month, but Mr. Kiersh did not present this fact (retention of the binder) at the June 7, 2018 Evidentiary Hearing. 6/5/19 Tr. at 59:14 - 60:18-20. Whether or not the Probation Officer had access to or retained the binder is of no moment because the binder did not verify that Defendant was authorized to participate in narrative therapy. While the binder, along with testimony by Dr. Nicoloff, demonstrated that narrative therapy is a modality, which the Court accepted, neither the binder nor Dr. Nicoloff could demonstrate that this modality was part of David Berner's treatment regimen, nor was David Bernier able to do so. Accordingly, Mr. Kiersh's failure to point out that the Probation Officer had Defendant's narrative therapy binder for one month did not prejudice David Bernier.

### c. Violation Nos. 5 and 7 (Timing of Submission of the Computer and Internet Use Questionnaire)

It is unclear whether or not Defendant views these violations as having been conceded; however, they were discussed during the June 5, 2019 Evidentiary Hearing, and accordingly, this Court will address these violations. At the June 7, 2018 Evidentiary Hearing, Kate Phillips, the Maine Probation Officer, testified that when Defendant submitted the Questionnaire in September 2017, it only contained one email address. When the Probation Officer confronted David Bernier about multiple email addresses discovered on his iPhone in late January 2018, he acknowledged the addresses, and after that conversation, in February of 2018, he sent her another Questionnaire that was also dated September 4, 2017, but it contained multiple email addresses. She spoke to Defendant about the "altered document," but he "denied that he altered the original form that was submitted in September" and provided no other explanation. 6/7/18 Tr. at 86.

David Bernier addressed this violation very briefly during the June 5, 2019 Evidentiary Hearing, noting that when he filled out the Questionnaire on September 4, 2017, he did not have access to his computer and he listed only one email account, He testified that he then gave the form to his Probation Officer on September 8, 2017, and when he went back in on September 12, 2017, he had access to his computer so he updated the form to reflect five email accounts. 6/5/19 Tr. at 177-178, 205. The Court notes that this explanation is inconsistent with Ms. Phillips' testimony that she gave David. Bernier a chance to explain the inconsistencies in the Questionnaires, but he could not do so. Nor did he provide the revised Questionnaire immediately after the Probation Office flagged this issue of multiple emails in January of 2018, but instead Defendant provided it to the Probation Officer in February of 2018.

Mr. Kiersh indicated that the only way David Bernier's version of events could have been established was if Defendant testified at the prior evidentiary hearing, and he did not. David Bernier's counsel suggested that if counsel had questioned Ms. Phillips about meeting with Defendant on September 12, 2017, it might have jogged her memory that possibly David Bernier supplemented the Questionnaire on September 12, 2017. 6/5/19 Tr. at 178, 205. This presumption is purely speculative. The only way Defendant could have elaborated on his story is if he had testified. The Court found credible and unrefuted Ms. Phillips' testimony that the second Questionnaire (which contained multiple email addresses) was not submitted to the Probation Office until February 2018, and accordingly, there is no prejudice to Defendant based on Mr. Kiersh not asking Ms. Phillips to speculate about what might have happened at the September 12, 2017 meeting.

### d. Violation No. 6 (Travel to New Hampshire Without Permission)

This violation is predicated on David Bernier's travel to New Hampshire on December 18, 2018, without first obtaining permission from his Probation Officer. Defendant's unauthorized travel was discovered by the Probation Officer when she conducted a search of his iPhone and found evidence of his trip in the form of photographs. According to the Probation Officer, David Bernier denied the trip, but later told her he traveled to New Hampshire to get medicine for his mother and he ran into bad weather and had to spend the night there. The Probation Officer acknowledged that David Bernier had traveled previously to New Hampshire on several occasions, with permission, in order to obtain medicine for his mother and take her for medical visits.

While Defendant could not deny that he traveled to New Hampshire without obtaining permission, he testified that Mr. Kiersh should have brought to this Court's attention the weather report for New Hampshire on that date, which demonstrated that freezing rain made it impossible

for him to return home that day.  Additionally, he had presented his attorney with a statement by his mother verifying that the reason for the visit was purchase of medication, but that letter was not used until sentencing.  6/5/19 Tr. at 64-68.  David Bernier acknowledged  that Mr. Kiersh did present the Court with information about his mother's medical needs.  6/5/19 Tr. at 95:22-25. Upon cross-examination, David Bernier agreed that presentation of the weather report "would have perhaps made the Judge think, Well, that's understandable why he had to stay over, and not impose incarceration for that violation[.]"  6/5/19 Tr. at 96:1-8.

Mr. Kiersh disagreed with Defendant's characterization of the importance of the weather report.  He commented that "[Defendant] unquestionably conceded this violation. And so giving me weather charts to say: Well, the weather got really bad, that's fine.  But that goes to mitigation. It doesn't go to whether or not there was a violation of a condition."  6/5/19 Tr. at 157: 8-20.  Mr. Kiersh elaborated that "[t]he violation of his condition was that he couldn't go out of state. But he had a lot of mitigation, the weather being one of them and the fact that his mother needed medication, and I believe he said he could get it more easily in New Hampshire.  That is mitigation. That does not dispute, refute, challenge or change the fact that there's a technical violation."  6/5/19 Tr. at 157:21-158:2.  Mr. Kiersh disputed further that this was an "emergency," stating that "there was never a request for an emergency - - for emergency leave to go to New Hampshire, and Mr. Bernier never said to me as his counsel that it was an emergency."  6/5/19 Tr. at 160:25-161:4. Furthermore, Mr. Kiersh noted that the fact that David Bernier had permission to go to New Hampshire on a number of previous occasions "doesn't negate" that he didn't have permission this time.  6/5/19 Tr. at 162:3-8.

At the June 5, 2019 Evidentiary Hearing, the Court noted that there was no dispute that David Bernier did not get permission to go to New Hampshire, and any discussion of why he went

would be mitigation or explanation. Furthermore, there is no indication that Defendant told the Probation Office after the fact that he had gone because it was an emergency situation. It is also unclear whether the letter from David Bernier's mother — which was presented at sentencing — would have been accepted at the revocation hearing because there would have been no way to cross-examine Defendant's mother, who is ill and has some cognitive issues. The Court mentioned that it did not consider the pictures on David Bernier's iPhone. With regard to the failure to put the weather report into evidence, the Court noted that the weather report was not relevant insofar as the violation was not that Defendant stayed overnight but rather, that he failed to obtain permission to travel in this particular instance, and he never followed up with the Probation Officer afterwards assuming it was an emergency. 6/5/19 Tr. at 194-197. Accordingly, whether or not Mr. Kiersh introduced the letter from David Bernier's mother and the weather report at the evidentiary hearing has no bearing on the fact that David Bernier violated the condition that he needed to seek permission to travel to New Hampshire. Even assuming *arguendo* that it could be construed as an emergency situation, there is no explanation for Defendant's failure to contact the Probation Office after the fact and explain why he had traveled to New Hampshire. Accordingly, there was no prejudice to Defendant in counsel conceding Violation No. 6.

**e. Violation No. 9 (Use of Unapproved Data Storage Device)**

Violation No. 9 relates to David Bernier's use of an unapproved data storage device in violation of the Computer and internet Monitoring Program. Ms. Phillips testified that, when confronted, Defendant admitted using an unapproved USB drive, and he explained that he was using it because he computer crashed. The Court notes the inaccuracy of Defendant's statement that he self-reported the use of the drive. 6/5/19 Tr. at 96:9-11. The Court found that Defendant

admitted the violation, and therefore, the violation was uncontested, and there is no prejudice to the Defendant if the technical violation was conceded.

### f. Violation No. 10 (Accessing a Website that was not Reported to the Probation Office)

Violation No. 10 is predicated on Defendant violating the Computer and Internet Monitoring Program by accessing a Down East Senior Housing website that he failed to report on both his original and revised Questionnaire. The Court is unclear whether Defendant views this violation as having been conceded, but because it was discussed during the June 5, 2019 Evidentiary Hearing, the Court will address it. With regard to Violation No. 10, the Probation Officer noted that David Bernier submitted another Questionnaire to the Probation Office on March 19, 2018, the date of this violation, and that Questionnaire lists the Down East website. In the August 23, 2018 Memorandum Opinion, this Court noted that Defendant's after-the-fact reporting of his website access did not counter his technical violation.

At the June 5, 2019 Evidentiary Hearing, Defendant testified that the reason he did not include this Down East website on his Questionnaire, which was completed on September 12, 2018, was that the website was "basically inactive" until the time he disclosed it later. 6/5/19 Tr. at 70. David Bernier "had only been out of prison for less than a month [and he] wasn't sure if [he] was going to continue with potentially looking for investors to fund [the] assisted living facility that [he] wanted to construct." 6/5/19 Tr. at 70:7-10. When asked by counsel if he wanted Violation 10 to be contested, he responded affirmatively. 6/5/19 Tr. at 70:21-22. Defendant testified that he went onto the website in order to post information relevant to an alleged identity fraud possibly involving solicitation by "individuals purporting to be from Downeast Senior Housing." 6/5/19 Tr. at 70:25-71:16; 72:2-73:17. David Bernier indicated that Mr. Kiersh did not

"bring out for the Court this scam alert that [he] had put on the website or [his] explanations" on Violation No. 10.  6/5/19 Tr. at 73:18-20.[7]

Even assuming *arguendo* that Mr. Kiersh had, without Defendant's own testimony, somehow been able to introduce Defendant's proffered reason for accessing the website, this does not excuse the fact that Defendant committed a technical violation by failing to disclose the website to the Probation Officer prior to accessing the website. Accordingly, there is no prejudice to the Defendant regarding Violation No. 10.

### g. Violation No. 11 (Accessing the Internet without Authorization – Annual Report)

Violation No. 11 is predicated on David Bernier filing a 2018 Florida not-for-profit corporation annual report, during a time when he was restricted to using only computers in the Probation Office.  The Probation Officer testified that Defendant was not in the Probation Office on the date the document was filed by the Defendant nor did Defendant have permission to use another computer.  6/7/18 Tr. at 92.  Because there was nothing in the record to contradict the testimony of the Probation Officer, this violation was uncontested.  During the June 5, 2019 Evidentiary Hearing, Defendant did not present any testimony regarding Violation No. 11, or mitigation of Violation No. 11, nor did Defendant link Violation No. 11 with any claim of ineffective assistance of counsel.  Accordingly, the Court's ruling on Violation No. 11 is unchallenged.

### h. Violation No. 12 (Accessing the Internet without Authorization – BOP Memorandum)

Violation No. 12 is predicated on David Bernier sending an email to David Dempsey, at FCI Fairton, requesting his assistance with a legal matter.  Specifically, David Bernier asked Mr.

---

[7] Counsel referred to Violation No. 10 once as Violation No. 11, but from the context of his direction examination of David Bernier, it is apparent that they are discussing Violation No. 10.

Dempsey to confirm that Defendant had signed a June 19, 2017 Wavier of Hearing to Modify Conditions of Supervised Release when he was "under duress." Mr. Dempsey testified that Defendant attached to the email a proposed letter/memorandum on letterhead similar to that used by the Bureau of Prisons. 6/7/18 Tr. at 16-18. Mr. Dempsey viewed it as a letter drafted by Defendant that Mr. Dempsey was not required to sign but was instead, asked to sign. 6/7/18 Tr. at 25. He did however find the letter deceptive, and Mr. Dempsey did not agree that Defendant acted under duress. 6/7/18 Tr. at 25-27.

Dr. Nicoloff had seen the letter and she testified that drafting it was consistent with David Bernier's personality traits and his desire to execute things himself as opposed to delegating to someone else. 6/7/18 Tr. at 109-111. Mr. Kiersh emphasized that Defendant was not trying to conceal his identity or misrepresent what he was doing, while the Government focused on the underlying technical violation – unauthorized use of a computer and access to the Internet. There was no allegation that anyone other than Defendant had sent the email to Mr. Dempsey or created the letterhead. The Court found that the technical violation supported revocation without finding that the alleged creation of BOP letterhead supported revocation.

At the June 5, 2019 Evidentiary Hearing, David Bernier indicated that he wanted his counsel to contest this violation. 6/5/19 Tr. at 74:4-7. Defendant expounded upon this by noting that he had asked Mr. Kiersh to contact Mr. Dempsey in connection with the motion opposing the modification of his supervised release conditions, but Mr. Kiersh "basically ignored [him]." 6/5/19 Tr. at 74:19-75:1. The letter drafted by Defendant for Mr. Dempsey's signature stated in part that "[Mr. Bernier] eventually signed the form, stating that he was doing so under duress." 6/5/19 Tr. at 76. Defendant's complaint about Mr. Kiersh's representation is set out in the following exchange between counsel and David Bernier:

Q: Is there anything in that [letter] where you're asking him - - Mr. Dempsey to say that Dempsey believes you were under duress?

A: No.

Q: What is it that you're asking Dempsey to say?

A: To say that I told him that I felt I was under duress when I signed that letter.

Q: Was that distinction ever pointed out by Mr. Kiersh at this revocation hearing?

A: I do not believe so.

Q: Is there anything in the memo that you sent to Mr. Dempsey that is inaccurate in any way?

A: No.

6/5/19 Tr. at 76:17-25.

The Court notes that Mr. Kiersh's cross-examination of Mr. Dempsey directly quoted from the letter drafted by David Bernier. 6/7/18 Tr. at 24. Furthermore, Mr. Kiersh questioned Mr. Dempsey as to whether or not he was disputing that it was signed under duress.

At the June 5, 2019 Evidentiary Hearing, Mr. Kiersh was asked if it would surprise him to learn that the letter written by Defendant to Mr. Dempsey "wasn't false at all in the sense that it didn't say 'I, Dempsey, think that he was acting under duress,'" to which Mr. Kiersh responded that the letterhead was false, "that's what I'm saying was false." 6/5/19 Tr. at 164. Mr. Kiersh's response is consistent with his concession on Violation No. 12, which was confined to his acknowledgement that he couldn't dispute that it was "not a smart thing" for Defendant to put a letter on BOP letterhead, but that Defendant did not hide it. 6/7/18 Tr. at 169-170. Mr. Kiersh did not however concede that Defendant had done anything wrong in asking Mr. Dempsey to sign a letter "to suggest that [he] was acting under duress when [he] signed off on the waiver in August of 2017." 6/7/18 Tr. at 169:21-24. He noted that David Bernier had no intent to create a false impression and it "doesn't go to intent that requires his reincarceration" as he was straightforward in his actions, even though the creation of letterhead was improper. 6/7/18 Tr. at 170-171.

It is clear from the record that Mr. Kiersh presented mitigating circumstances regarding this violation, and he argued that the Court should focus on the fact that Defendant was reaching out to get help to contest the monitoring conditions without misrepresenting himself versus focusing on the Defendant's creation of the letterhead. The distinction that Defendant tries to make between whether Mr. Dempsey had to agree that Defendant was under duress when he signed the waiver or whether he just had to agree that Defendant said he was under duress is insignificant insofar as the Court viewed this as a technical violation, which was based on Defendant's accessing the Internet without authorization. The Court finds that there is no prejudice to Defendant with regard to this violation or any of the other violations previously discussed. Accordingly, the Court finds that neither prong of the *Strickland* standard has been met, and Defendant's claim of ineffective assistance of counsel based on concession of certain violations shall be DENIED.

## IV. CONCLUSION

This case was remanded to this Court for an evidentiary hearing and determination regarding Defendant's claim of ineffective assistance of counsel relating to: (1) counsel's concession of guilt to certain violations during the revocation hearing; and (2) counsel's failure to provide the Defendant with the revised terms of his supervised release conditions after those changed in April 2018, which allegedly led to additional violations. An evidentiary hearing was held on June 5, 2019. Based upon the testimony and evidence presented at that hearing, in addition to consideration of the prior record in this case, the Defendant's claim of ineffective assistance of counsel shall be DENIED. The Court concludes that counsel's performance was reasonable under prevailing professional norms, and counsel's concession of guilt to certain violations during the revocation hearing did not prejudice the Defendant. Furthermore, counsel's failure to provide the Defendant with the revised terms of his supervised release conditions did not prejudice the

Defendant because the Defendant was present in the courtroom when the revision of the supervised release conditions was discussed on the record. Defendant was made aware of the restrictions on his Internet usage and the requirement that he obtain Probation Office approval and monitoring when he used the computer at the Probation Office was reiterated.

DATED: July 18, 2019 _____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE